UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHERINE M. MUNDALE,

    Plaintiff,

v.                                        Case No. 8:08-CV-217-T-24-TBM

LOCKHEED MARTIN CORPORATION,

    Defendant.

_____/

## ORDER

This cause comes before the Court on Defendant Lockheed Martin Corporation's ("Lockheed") Motion for Summary Judgment (Doc. No. 20) as to Plaintiff Catherine M. Mundale's retaliation claim under Section 510 of the Employee Retirement Income Security Act of 1974, 28 U.S.C. §§ 1001, *et. seq.* ("ERISA"). Mundale argues that a genuine issue of material fact remains as to whether Lockheed terminated her employment in retaliation for her request for ERISA benefits and to interfere with her future use of benefits. (Doc. No. 20.) For the reasons stated herein, Lockheed's motion is granted.

**I.    Facts**

Mundale began working for Lockheed in October of 2006, as a scheduler in the Procurement Planning and Control business unit. (Mundale dep. at 27-28.) Five months into her employment, in February of 2007, Lockheed began documenting Mundale's excessive absences and tardiness. (Doc. No. 17; Ex. C.) Mundale provided various explanations for her attendance issues, including car trouble, plumbing issues, a home security alarm issue, and an un-

remembered medical appointment. (*Id.*) From October of 2006 through February of 2007, Mundale was away from work a total of 124.2 hours, of which 34.7 hours were logged as "personal business." (Doc. No. 17, Ex. D.)

In February or March of 2007, Mundale began feeling very ill. (Mundale dep. at 29.) Her symptoms included severe cramps, nausea, vomiting, and pain in her esophagus. (*Id.* at 31.) It was about this time that Mundale began citing medical issues as her reason for her absenteeism. (Doc. No. 17, Ex. E.)

On April 27, 2007, Mundale was issued a written warning for her unsatisfactory performance, including her failure to produce timely and accurate work and her excessive absences, and she was placed on a performance improvement plan. (Doc. No. 17, Ex. I.) As a part of this plan, Mundale was instructed to provide documentation from her doctor for any future absences caused by illness. (*Id.*) Mundale was warned that failure to provide documentation would result in an unexcused absence and unpaid leave, and possible disciplinary action. (*Id.*)

After a meeting with her managers during which this plan was explained, Mundale became emotionally upset and physically sick. (*Id.*) She was transported to the hospital in an ambulance and never returned to work at Lockheed again. (*Id.*; Mundale dep. at 91.)

On April 30, 2007, Mundale applied for short term disability leave through Cigna, Lockheed's third-party benefits provider. (Doc. No. 17, Ex. J.) Mundale was initially approved for the leave, contingent upon medical review and approval. (*Id.*)

Mundale provided Lockheed with a note from her physician, Dr. Peter Walton, that excused her from work from May 7 through May 20, 2007. (Mundale dep. at 39-41; 46; Weiss

dep. at 46.)  Mundale was then treated by Dr. Meena Jain on May 22, 2007, who excused her from work from May 22 through May 28, 2007.  (Weiss dep. at 46; Mundale dep. at 39-41).  Dr. Jain, however, refused to excuse Mundale from work beyond May 28 because Mundale would no longer be under her care.  (Mundale dep. at 39-41; 46-48.)  Instead, Dr. Jain referred Mundale to a specialist in gastroenterology.  (*Id.* at 46-48.)  Dr. Jain's note stated that "Patient can return to work on Monday, May 28th, 2007."  (*Id.* at 48.)  Mundale made an appointment with Dr. Glamour, a specialist, but the doctor did not keep the appointment and was in India unexpectedly when Mundale arrived at the office.  (*Id.* at 37-38.)

Mundale did not return to work on May 28, 2007, nor did she provide another doctor's excuse or release from work.  (Mundale dep. at 91.)  Lockheed called Mundale everyday from April 27, 2007, the day she left work in an ambulance, until the date of her termination, to discuss her reasons for not returning to work.  (*Id.* at 72-72.)  Mundale's managers stated that "they had a business to run" and that she "need[ed] to come into work as soon as possible."  (*Id.*)

In the meantime, Cigna obtained Mundale's medical information and ultimately determined on June 5, 2007, that Mundale would be denied short term disability coverage.  (Doc. No. 17, Exs. K, M.)  Cigna specifically found that "[t]he medical documentation provided does not support your inability to work as of April 30, 2007."  (*Id.* at Ex. K.)

Upon notification of Mundale's denial of benefits, on June 5, 2007, Lockheed again requested medical documentation to support Mundale's continued absences.  (Doc. No. 17; Ex. M.)  Mundale was advised that failure to either return to work or provide medical documentation excusing her from work by June 6, 2007, would "result in disciplinary action up to and including termination."  (*Id.*)

3

The following day, on June 6, 2007, Mundale did not return to work. (Doc. No. 17, Ex. N.) Instead, she left voicemail messages stating that she would not be reporting to work that day because she was sick and was going to the doctor at 2:30 p.m. (*Id.*) In a written letter, Lockheed provided Mundale a final warning that her absence was unexcused because she had not provided sufficient medical documentation. (*Id.*) Mundale was further advised that her failure to report to work by June 8, 2007 or to provide sufficient documentation restricting her from work would be considered an unexcused absence and would result in disciplinary action up to and including termination. (*Id.*)

Mundale was terminated the next day, on June 8, 2007, when she did not return to work or provide medical documentation for her absence. (Doc. No. 17; Ex. O.) Lockheed cited absenteeism and insubordination as the reasons for her termination. (*Id.*) After her termination, Mundale was treated by an specialist in gastroenterology, who diagnosed her with diarrhea and predominant irritable bowel syndrome. (Mundale dep. at 67-68.)

On January 31, 2008, Mundale filed a one-count complaint against Lockheed for retaliation under Section 510 of ERISA. Specifically, Mundale alleges that Lockheed terminated her employment in retaliation for her requesting short-term benefits pursuant to an ERISA plan. In her response to Lockheed's summary judgment motion, Mundale also appears to be characterizing her claim as one for interference–that Lockheed terminated her employment to interfere with her future use of benefits. However, regardless of whether Mundale's claim is construed as one for retaliation or interference, the Court applies the same analysis. Summary judgment is appropriate because Mundale has not established a prima facie case of unlawful

discharge under Section 510, nor has she established that the reasons for her termination were pretextual.

## II. Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quotations and citation omitted).

## III. Discussion

Section 510 of ERISA makes it unlawful "to discharge . . . or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled." 29 U.S.C. § 1140. To survive summary judgment on a claim based on Section 510 of ERISA, the plaintiff must show that "the employer had the specific intent to interfere with the employee's ERISA rights." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1222 (11th Cir. 1993). "A plaintiff is not required to prove that interference with ERISA rights was the sole reason for the discharge but must show more than the incidental loss of benefits as a result of a discharge." *Id.* at 1222-23. The plaintiff can meet this burden with

either direct or circumstantial evidence. *Id.* at 1223. Here, Mundale argues that she has presented circumstantial evidence of an ERISA violation.

When a plaintiff relies on circumstantial evidence to prove a violation of Section 510 of ERISA, the Court uses the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis. *Clark,* 990 F.2d at 1223. Under this framework, the plaintiff must raise an inference of discrimination by establishing a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. at 1824. The burden then shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the alleged discrimination. *Id.* Once the defendant produces such a reason, the plaintiff must then prove that the legitimate reason was a mere pretext for discrimination. *Id.* at 804, 93 S. Ct. at 1826.

A plaintiff may establish a prima facie case of unlawful discharge under Section 510 by showing: (1) that she belongs to a protected group, meaning that she was entitled to protection from discrimination under ERISA; (2) that she was qualified for her position; and (3) that she "was discharged under circumstances that give rise to an inference of discrimination." *Clark*, 990 F. 2d at 1223. Lockheed disputes that Mundale was qualified for her position and that she was discharged to prevent her from receiving benefits.

Lockheed first contends that Mundale was not qualified for her position because of her excessive absenteeism. At this stage of the analysis, however, the Court is "focused on [the plaintiff's] skills and background to determine if [she] [was] qualified for a particular position." *Id.* at 1227. The record shows that Lockheed sought to hire Mundale and that she was experienced in the defense procurement field. (Mundale dep. at 27-28.) These facts are

6

sufficient to establish her qualification for the job, at least for purposes of establishing a prima facie case. Lockheed's evidence that Mundale was placed on a performance improvement plan shows that she was not meeting the company's standards, but does not show that she was unqualified for the job. "[C]oncerns about [Mundale's] performance are more appropriately raised as part of the second and third steps of the *McDonnell Douglas* scheme." *Clark*, 990 F.2d at 1227.

Next, Lockheed contends there is no record evidence to suggest that it was motivated to terminate Mundale due to costs associated with her disability benefits. "To satisfy the last element [of the prima facie case], the plaintiff does not have to prove discriminatory intent but must introduce evidence that suggests interference with ERISA rights was a motivating factor." *Id.* at 1223-24. "The plaintiff, however, cannot establish a prima facie case merely by showing that, as a result of the termination, [she] was deprived of the opportunity to [receive] more benefits." *Id.* at 1224. "Instead, the employee must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular." *Id.*

Mundale has not pointed to any evidence whatsoever that suggests that her termination was motivated by Lockheed's desire to interfere with her ERISA benefits or to retaliate against her for requesting ERISA benefits. The record shows that Mundale was placed on a Performance Improvement Plan for poor performance and excessive absences before her application for short-term benefits. The only action that Lockheed took with regard to Mundale after she left work on April 27, 2007 was to inquire when she would be returning to work and to request medical verification for her time away from work. Mundale was not terminated until after Cigna denied her request for short-term disability benefits and she refused to return to work

7

or provide medical documentation excusing her from work. Moreover, the undisputed record also shows that Lockheed had no decision-making authority or influence over Cigna's decision to deny short-term benefits. (Weiss dep. at 14-18.) Accordingly, Mundale's claim fails because she has not established a prima facie case of unlawful termination under Section 510.

Even assuming that Mundale had put forth evidence that was sufficient to create an issue of fact as to whether there was an inference of discrimination, the Court concludes that Mundale has failed to establish that Lockheed's legitimate, nondiscriminatory reason for her termination–her failure to return to work or provide medical documentation excusing her from work–was pretextual. Mundale argues that a reasonable juror could conclude that Lockheed was tired of accommodating her and that allowing her to remain on medical leave had become a hassle. So, according to Mundale's theory, Lockheed intentionally caused Cigna to deny her benefits and then required her to return to work or provide a medical excuse, knowing that she would not have sufficient time to see a specialist. Mundale contends that this case is similar to *Salus v. GTE Directories Service, Corp.*, 104 F.3d 131, 136 (7th Cir. 1997), a case in which the employer's assertion of a job-abandonment policy as the reason for termination was pretexual because, among other reasons, the employer was aware of the employee's medical condition and of his need to remain off work until after he saw a psychiatrist.

The Court is not persuaded by these arguments. There is absolutely no record evidence to support Mundale's contention that Lockheed had any influence whatsoever over Cigna's decision whether to grant or deny short-term disability benefits. To the contrary, the record shows that the decision was made entirely by Cigna and that Mundale's managers were not involved. (Weiss dep. at 14-18). Moreover, this case is distinguishable from *Salus* because in

that case the employee's physician instructed him *not* to return to work until he could see a psychiatrist and scheduled an appointment for the employee for the following week. 104 F.3d at 134. By contrast, Mundale's physician, Dr. Jain, cleared her to return to work as of May 28, 2007, notwithstanding the fact that she referred Mundale to a gastroenterologist. The fact that Lockheed terminated Mundale's employment knowing that she had been referred to a gastroenterologist does not show that her termination was pretexual under these circumstances.

Mundale has not set forth any facts to establish that Lockheed's legitimate non-discriminatory reasons for terminating her were pretext for precluding her from receiving short-term disability benefits. At the time of her termination, Mundale had already been denied short-term disability leave as not medically necessary, and her own treating physician, Dr. Jain, had cleared her to return to work. Mundale was terminated only after she failed to return to work or provide a medical excuse. Accordingly, viewing the record in the light most favorable to Mundale, the Court concludes that Mundale has failed to put forth evidence to raise an genuine issue of material fact sufficient to withstand summary judgment.

**IV. Conclusion**

It is **ORDERED AND ADJUDGED** that Lockheed's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant Lockheed Martin Corporation and against Plaintiff Catherine M. Mundale and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of January, 2009.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge